UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10-CV- 2158-JAR |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion in Limine Regarding Plaintiff's Experts, the Written Reports, Conclusions and Opinions of Dr. David Prelutsky, Jeff McManemy and Daron Smith, and Motion to Strike their Testimony and Written Reports [ECF No. 141].[1] The Motion is fully briefed and ready for disposition. For the following reasons, the Motion will be denied.

**Background**

Plaintiff John Doe (Doe) was a pre-trial detainee in the City of St. Louis from shortly after his arrest on March 20, 2010 to November 12, 2010. Doe is HIV positive. In this action for prospective relief and damages under 42 U.S.C. § 1983, Doe alleges Defendants demonstrated deliberate indifference to his serious medical needs during his confinement in both the Criminal Justice Center and the Medium Security Institution. Doe has designated three health care professionals as expert witnesses in this matter, Dr. David J. Prelutsky, a physician specializing

---

[1]Although Defendants' motion is labeled a motion in limine, it seeks to exclude the testimony of Plaintiff's expert witnesses pursuant to Daubert v. Merrrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kuhmo Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999). The Court will, therefore, construe the motion as a Daubert motion.

in the care and treatment of patients with HIV; Nurse Jeff McManemy, a community college professor of nursing; and Daron Smith, a registered pharmacist.

**Legal standard**

The admission of expert testimony in federal court is governed by Fed.R.Evid. 702. Rule 702 "favors admissibility if the testimony will assist the trier of fact." Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998). The Court is guided by the principles set out in Daubert v. Merrrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The trial judge is required to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. Id.,at 589. "The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and determine the weight that should be accorded evidence." See United States v. Vesey, 338 F.3d 913, 916–17 (8th Cir.2003)(citing Arkwright Mut. Ins. Co. v. Gwinner Oil Co., 125 F.3d 1176, 1183 (8th Cir.1997)). Expert testimony should be admitted if it is based on sufficient facts, it "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; Vesey, 338 F.3d at 916-17. Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Clark, 150 F.3d at 915 (citation and internal quotation omitted). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." U.S. v. Coutentos, 651 F.3d 809, 820 (8th Cir. 2011). See also Larson v. Kempker, 414 F.3d 936, 941 (8th Cir.2005).

**Discussion**

    **A. Dr. David Prelutsky**

The parties do not dispute Dr. Prelutsky's qualifications to give expert testimony in this

2

case. As described by Doe, Dr. Prelutsky has extensive knowledge, skill, experience, training and education as a clinical physician and HIV specialist.[2] Rather, Defendants seek to exclude his testimony and expert report on the grounds that his opinions are neither relevant nor reliable.

Dr. Prelutsky was retained to provide an expert opinion on whether the medical personnel who were responsible for providing care to Doe when he was a pretrial detainee were "deliberately indifferent" to his serious medical needs or created a substantial risk to his health or safety. (Expert Report - Dr. David J. Prelutsky, Doc. No. 141-1, p. 3). His opinions are based on a statement of facts and assumptions provided to him by Doe's counsel regarding Doe's treatment history for HIV infection and herpes viral infection of the eye (HSV), his prison medical records, blood test results from Doe's time in detention and pre- and post- test results, and a letter from the SLU Eye Institute regarding Doe's HSV. (Id., pp. 9-13)  Dr. Prelutsky's opinion can be summarized as follows:

> [T]he healthcare providers who provided care to Doe while he was a pre-trial detainee and knew he had HIV and HSV, should have known that these diagnoses constituted serious medical needs, and therefore, by each of their failures - the failure to get him HIV medications for 17 days and HSV medication for 61 days, the failure [to] provide him medications regularly thereafter and document compliance with his medication regime, the failure to test him more frequently given his non-regular receipt of medications - demonstrated a refusal to provide essential care or disregard for his serious medical needs and created a substantial risk to his health or safety.

---

[2]Specifically, Dr. Prelutsky is a board certified internal medicine physician since 1982, and is certified by the American Association of HIV Medicine and HIV Specialists. He belongs to the HIV section of the Infectious Disease Society of America and the HIV Medical Association. His two-physician practice treats approximately 5,000 patients, 3,000 of which are treated for HIV. His practice is predominantly clinical; however, Dr. Prelutsky is also a member of the faculty at the Washington University School of Medicine and has researched and published extensively. The majority of his scientific presentations, publications, and clinical research pertains to HIV. (Expert Report - Dr. David J. Prelutsky, Doc. No. 141-1, p. 3).

(Id., p. 7)

In support of their motion, Defendants argue Dr. Prelutsky relied upon a set of assumptions regarding Doe and his treatment history instead of actually talking with him or taking an independent medical history from him. Assumptions and assertions advanced by plaintiff's counsel are not, Defendants contend, the kind of data on which a medical doctor would typically rely when forming opinions and conclusions about the efficacy of medical care received by a patient. Further, since Dr. Prelutsky's opinion is based entirely on Doe's prison medical records, as opposed to an evaluation of Doe's condition and treatment compliance before and after his incarceration, it is Defendants' position that he cannot opine on whether or not Doe has been damaged by the actions of the medical providers in jail.

Doe responds that Dr. Prelutsky's opinions are both relevant and reliable as to (i) the standard of care, i.e., "the usual or accepted treatment" expected of a physician and medical personnel with knowledge of Doe's diagnoses and medications, (ii) whether the actual treatment Doe received while detained met the expected standard of care, and (iii) whether Doe was damaged or harmed by the care he received while a pre-trial detainee. Doe contends this testimony will assist the jury to understand the evidence and determine the standard of care, a fact in issue. In addition, Dr. Prelutsky's medical testimony is reliable given his clinical knowledge, skill, experience, training and education; he is also a recognized HIV specialist.

For Doe to prevail on his claim that Defendants were deliberately indifferent to his serious medical needs, he must establish that (1) he suffered from an objectively serious medical need, and (2) the prison officials knew of the need yet deliberately disregarded it. Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th

Cir. 1997)). Whether a condition is a serious medical need[3] and whether an official was deliberately indifferent are questions of fact. Id., 638 F.3d at 915 (citation omitted). Deliberate indifference is established if a defendant is shown to have actual knowledge of a plaintiff's serious medical need yet disregarded it. "'[D]eliberate indifference includes something more than negligence but less than actual intent to harm;' it requires proof of a reckless disregard of the known risk." Moore v. Duffy, 255 F.3d 543, 544 (8th Cir. 2001)(citing Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998)).

Defendants argue that all of the opinions developed for trial by Doe's experts are focused on the standard of care for medical professionals, and are thus unrelated to whether or not the medical providers were deliberately indifferent to Doe's serious medical needs. It is clear, however, that deliberate indifference may be demonstrated by showing that medical treatment deviated from the applicable standard of care. See Moore, 255 F.3d at 545 (citing Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir.1990)). "Often whether such a significant departure from professional standards occurred is a factual question requiring expert opinion to resolve." Id. (citing Greason v. Kemp, 891 F.2d 829, 835 (11th Cir.1990)). In Jenkins, the court was troubled by the fact that the record contained virtually no evidence of the appropriate standard of care nor any indications whether the doctor's actions amounted to deliberate indifference as measured by that standard. Jenkins, 919 F.2d at 93. Dr. Prelutsky's testimony is clearly relevant and will assist the trier of fact to understand the evidence and determine the standard of care and whether any of the defendants deviated from that standard, thereby harming Doe.

---

[3] The parties do not appear to dispute that Doe suffers from an objectively serious medical need, i.e., HIV and HSV.

Defendants complain that Dr. Prelutsky's lack of experience providing care to persons in a correctional setting renders his testimony unreliable. Given the liberal approach to admitting expert testimony, however, most arguments about gaps in an expert's qualifications or experience relate more to the weight to be given the expert's testimony than to its admissibility. Holbrook v. Lykes Bros. S.S.Co., Inc., 80 F.3d 777, 782 (3rd Cir. 1996). See also Robinson v. GEICO General Ins. Co., 447 F.3d 1096, 1100-01 (8th Cir. 2006)(citations omitted).

Defendants' general complaint that Doe's experts lack a sufficient factual basis for their opinions is not grounds for excluding their testimony and reports. Again, the factual basis of an expert opinion goes to the credibility of the testimony, not admissibility. "It is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Bonner v. ISP Technologies, Inc., 259 F.3d 924, 929-30 (8th Cir. 2001).

Finally, Defendants argue that the testimony and reports of Doe's experts will be more prejudicial than probative given the "cloak of scientific reliability" afforded the opinions of pharmacists and doctors by laypersons without medical training, and particularly the opinions of those with advanced training and speciality in HIV/AIDS. This argument could be directed against any expert retained to opine on a technical or scientific issue and does not constitute grounds for excluding such an expert's testimony or report.

**B. Jeff McManemy**

The parties do not dispute Nurse McManemy's qualifications to give expert testimony in this case. As described by Doe, McManemy has extensive experience, knowledge, skill, training

6

and education relating to nursing care.[4] As with Dr. Prelutsky, Defendants seek to exclude McManemy's testimony and expert report on the grounds that his opinions are neither relevant nor reliable.

Nurse McManemy was retained to provide an expert opinion on whether the nurses who were responsible for providing care to Doe when he was a pretrial detainee were "deliberately indifferent" to his serious medical needs or created a substantial risk to his health or safety. (Expert Report of Jeff McManemy, Doc. No. 141-2, p. 4). His opinions are based on a statement of facts and assumptions provided to him by Doe's counsel regarding Doe's treatment history for HIV infection and HSV, his prison medical records, and policies. (Id., pp. 19-23). It is McManemy's opinion that "[i]n this particular situation, [Doe] did experience a deliberate indifference to his care by the lack of nursing to provide a 'responsible and an accountable demonstration of action.' " (Id., p. 16)

In support of their motion, Defendants argue that because McManemy admittedly did not interview or review the depositions of any of the nurse defendants in this case, he has no credible basis on which to testify about their conduct. Specifically, he cannot testify with any certainty as to whether or not the state of the medication administration records (MARs) under the hand of each documenting nurse could be accounted for by paperwork error or omission, an inadvertent

---

[4]Specifically, McManemy has been a nurse since 1984. He has a Bachelor of Science in Nursing degree, a Master of Science in Nursing, and a Doctor of Science in Nursing Education and Administration. He has served as a registered nurse, clinical nurse specialist, nursing supervisor, coordinator of nursing education, and nursing administrative supervisor. In addition to his clinical and administrative work, McManemy is a professor of nursing at St. Louis Community College at Florissant Valley, where he previously served as the Chairperson of the Nursing Program from 2003 to 2005. He has authored and/or contributed to a number of nursing publications and regularly delivers nursing presentations outside his normal teaching duties. (Expert Report of Jeff McManemy, Doc. No. 141-2, p. 3).

failure to provide all medications as prescribed, or some other circumstance. Defendants further argue that McManemy's assertions that imperfect nursing records made while nurses passed medications to Doe and others in the jail demonstrates the individual nurses' deliberate indifference to Doe's serious medical needs invades the province of the jury. Finally, McManemy cannot testify with any certainty that any nurse passing medications to prisoners had an affirmative duty, beyond proper charting of missed doses, to procure additional medication supplies should they run out.

As noted above, Defendants' complaint that Doe's experts lack a sufficient factual basis for their opinions is not grounds for excluding their testimony and reports. The factual basis of an expert opinion goes to the credibility of the testimony, not admissibility. Bonner, 259 F.3d at 929-30.

In order for Doe to prevail on his claim, he must establish, *inter alia*, that Defendants, including fourteen nurses, were deliberately indifferent to his serious medical needs. McManemy states in his expert report that in addition to being competent, nurses are expected to be responsible and accountable in their professional role. (Doc. No. 141-2, p. 10) "Accountability means being answerable for all activities surrounding patient or client care," and "can be evaluated against the standards of practice." (Id.). His opinions on whether a nurse would be expected to understand that diagnoses of HIV or HSV constitutes "serious medical needs," as well as the standard of care expected of a nurse responsible for Doe's care in the areas of medication administration, continuity of care, complaint management, record transfer and medication administration and documentation, are certainly relevant to the determination of facts at issue.

**C. Daron Smith, RPh**

Again, the parties do not dispute Mr. Smith's qualifications to give expert testimony in this case. As described by Doe, Mr. Smith is a registered pharmacist and has experience working as an HIV Specialist Pharmacist.[5] Defendant's principle dispute with Smith's testimony concerns relevance, since there is no allegation or theory of recovery pled against any pharmacist in this case.

Smith was asked to provide an expert opinion on whether the pharmaceutical care, policies, procedures, and practices of those responsible for Doe's care while he was detained were deliberately indifferent to his serious medical needs or created a substantial risk to his health or safety. (Doc. No. 141-3, p. 8) His opinions can be summarized as follows:

> [T]he standard of care was not met. The standard of medical care is to not even miss one single dose of medication. Missing doses of HIV medication increases risk of complication and HIV progression, ... risk of viral drug resistance, ... and the increased risk for opportunistic infections from immune depletion...
>
> The policy of not getting HIV medications, which are not in stock, from the emergency pharmacy, is not in [sic] meeting the standard of care...Not getting his medication for 17 days is completely against the Standard of Care for HIV treatment. Subsequent missed doses, which are impossible to determine from the unreliable MARs, is also so far off the standard of care for an HIV/AIDS patient.
>
> Additionally, because documentation of medication delivery is very important for institutional settings, in order to monitor a patient's progress with his disease state, the inaccurate and incomplete record keeping evident in [Doe's] file no doubt interfered with his treatment and adversely affected his care.

---

[5]More specifically, Smith graduated from St. Louis College of Pharmacy in 1988. He holds a certification in HIV speciality from the University of Buffalo and has passed the American Association of HIV Medical Specialists' exam. He is an adjunct professor for St. Louis College of Pharmacy, where he teaches an Inter-Professional Team course to pharmacy students and medical students, which involves a team approach to the provision of healthcare. (Expert Report - Daron Smith, Doc. No. 141-3, p. 2).

(Id.)

The Court has reviewed the pleadings and finds no allegations of negligence in the operation of the pharmacies at either correctional facility owned and operated by the City. While Doe makes some general allegations regarding the policies and procedures of Defendants Corizon and the City, Smith's proffered report and testimony appears to be outside the scope of the complaint. Since the Court's ruling on Defendants' motion is interlocutory only, the Court will grant Defendants' motion as to Mr. Smith and allow Doe to make an offer of proof at the time of trial.

**Conclusion**

For the foregoing reasons, Defendants' motion will be granted as to Daron Smith and denied as to Dr. Prelutsky and Nurse McManemy.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion in Limine [ECF No. 141] is **GRANTED** as to the Written Reports, Conclusions and Opinions of Daron Smith.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine [ECF No. 141] is **DENIED** as to the Written Reports, Conclusions and Opinions of Dr. David Prelutsky and Nurse Jeff McManemy.

Dated this 4th day of April, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE